Gregg *v.* Pierce.

[BROOME GENERAL TERM, May 9, 1869. *Balcom, Boardman* and *Parker,* Justices.]

GREGG *vs.* PIERCE.

L. having been convicted of a felony, filed exceptions and sued out a certiorari, and being at large on bail, he left the state and failed to appear to receive sentence. The defendant, who was one of his bail, thereupon executed a writing offering a reward of $250 to any person who should take and safely lodge L. in the Elmira jail, and delivered the same to the plaintiff, who was sheriff of Chemung county. The latter pursued L. to Illinois, and there, under a requisition from the governor of this state, arrested L. and lodged him in the jail at Elmira. *Held* that an action would lie against the defendant, to recover the reward offered by him.

*Held, also,* that the fact that the plaintiff was sheriff, or that the requisition upon the governor of Illinois described him as sheriff, added nothing to his authority under the requisition, and that he must be deemed to have made the arrest as a private citizen, merely, and not as sheriff.

And that the statute prohibiting sheriffs or other officers to whom fees are allowed by law for any service, from taking or receiving any other or greater fee or reward, for services rendered, than such as are allowed by law, when construed according to its spirit and meaning, did not affect the plaintiff's right to recover such reward.

The cases of *Hatch* v. *Mann,* (15 *Wend.* 44,) and *Harp* v. *Osgood,* (2 *Hill,* 216,) distinguished from the present.

THIS action was tried at the Chemung circuit, without a jury, in September, 1859. The plaintiff recovered a judgment against the defendant for $272.27 damages, and $46.85 costs, amounting in all to $319.12. The defendant appealed from the judgment to the general term of this court.

Gregg *v.* Pierce.

*Thurston, Hart & Benn,* for the plaintiff, cited *Code,* §§ 147, 148, 149 ; 5 *Metcalf,* 57 ; 15 *Wend.* 44 ; 2 *Burr.* 924 ; 2 *R. S. 4th ed.* 839, § 5 ; 2 *Paige,* 570 ; 2 *Har. &. G.* 54 ; 1 *Greenl. Ev.* § 458.

*G. L. Smith* and *Hiram Gray,* for the defendant, cited 15 *Wend.* 44–46 ; *Act of Congress, February* 12, 1793 ; 3 *R. S. 3d ed.* 1043, § 52 ; 2 *id. 2d ed.* 51, § 5 ; 2 *Hill,* 216 ; 4 *Jac. Law Dic.* 433, *title Office; Sewall on Sheriff,* 458 ; 1 *Pick.* 171 *and* 173 ; 7 *id.* 279 ; 1 *Hill,* 87.

*By the Court,* BALCOM, J. The written promise of the defendant to pay any person or persons $250 reward, who should take and safely lodge in the Elmira jail, George Loop, was executed and delivered to the plaintiff on the 26th day of May, 1858. The plaintiff, as sheriff of Chemung county, was then under no obligation to arrest Loop and lodge him in jail. He had no process for his apprehension. Loop had previously been convicted of the crime of robbery, in the Chemung oyer and terminer, and had taken exceptions on his trial; his sentence had been stayed; a certiorari had been sued out, and the exceptions had been removed into this court. He had been permitted to go at large, upon the defendant and another becoming bail for his appearance at the next term of said court of oyer and terminer; and he had not appeared at such term, although this court, after determining that none of his exceptions were well taken, had required him to do so, to receive sentence; but he had left the state; and where he was, neither the plaintiff nor defendant had any knowledge. It was upon this state of facts that the plaintiff concluded to attempt to find Loop, and safely lodge him in the Elmira jail, with the expectation, if he succeeded, of receiving the $250 reward promised therefor by the defendant.

It is clear that if the plaintiff had been so fortunate as

Gregg *v.* Pierce.

to have caught Loop in sight of the Elmira jail, before he obtained either of the requisitions hereinafter mentioned, and safely lodged him in said jail, he would have been entitled to the $250 reward from the defendant.

It is claimed by the defendant's counsel that because the plaintiff, after he received the defendant's written promise, sent to Albany and procured a requisition from the governor of this state upon the governors of South Carolina and Illinois for Loop, as a fugitive from justice, and used the one upon the governor of the last mentioned state, in taking him from that state to the Elmira jail, where he safely lodged him, he cannot recover the $250 reward of the defendant. And it is urged by the defendant's counsel that this position is strengthened by the fact that the plaintiff's accounts for expenses and services, in going to South Carolina in search of Loop, and in going to Illinois and bringing him from that state to the Elmira jail, were audited by the comptroller of this state and paid out of the treasury thereof.

The plaintiff paid a person $25 for going to Albany after one of the requisitions, and another $50, by his note, for information as to where Loop was; which sums were not included in his accounts that were audited by the comptroller and paid out of the treasury. And it is not probable that the plaintiff would have procured either of the requisitions, or taken any steps to find Loop, if he had not been moved to do so by the defendant's promise of $250 reward.

The fact that the plaintiff was sheriff of Chemung county, or that the requisition upon the governor of Illinois described him as sheriff, can have no influence in the case; for the judge, before whom the cause was tried, had found he did not act as sheriff, in taking Loop, or in bringing him to the Elmira jail. Besides, the fact that he was sheriff added nothing to his authority under the

requisitions. I think what he did must be regarded done by him as a citizen and not as sheriff.

The defendant's counsel mainly relies on two sections of the Revised Statutes and two decisions of our courts to sustain the position that the defendant is not liable to pay the $250 according to his promise. He insists that the promise is void by statute.

The case is not like that of *Hatch* v. *Mann*, (15 *Wend.* 44.) In that case Hatch had procured a warrant against one Gallup, and promised Mann, who was a constable, and obliged by law to serve it after it was delivered to him, to pay him an extra compensation if he would arrest Gallup on it in the night, which he did. Mann made the arrest as constable, and it was held he could not recover the extra compensation promised him, because he rendered the service as constable, his fees therefor being prescribed by law. In this case the defendant had no warrant or process for the apprehension of Loop, and the plaintiff received none, *as sheriff*, that authorized him to arrest Loop. The requisition upon the governor of Illinois only constituted the plaintiff an agent of the governor of this state to take Loop. The case of *Parker* v. *Newland* (1 *Hill*, 87) is not any more favorable to the defense in this action than *Hatch* v. *Mann*, (*supra.*) And that of *Harp* v. *Osgood* (2 *Hill*, 216) does not sustain the position of the defendant's counsel in the least.

One of the sections of the statute relied upon by the defendant's counsel is as follows: "No judge, justice, sheriff or other officer whatsoever, or other person to whom any fees or compensation shall be allowed by law for any service, shall take or receive any other or greater fee or reward for such service, but such as is or shall be allowed by the laws of this state." (2 *R. S.* 650, § 5.) I think if this section prohibits persons who render services in their private characters from receiving extra compensa-

Gregg *v.* Pierce.

tion or rewards therefor, it only does so when the amount of their fees or compensation for the particular service is fixed by law, and does not rest in the discretion of some officer or board. (*See* 15 *Wend.* 48.) And as the services in this case were performed by the plaintiff in his private character, and not as an officer, and his accounts therefor, so far as the state or the governor thereof was concerned, were to be audited by the comptroller, according to his views of the correctness and justice thereof, the plaintiff could lawfully receive a reward from the defendant for the same services he was paid for out of the treasury of the state. I think the statute above quoted, when construed according to its spirit and meaning, does not in the least affect the right of the plaintiff to recover the reward promised him by the defendant. If it had been literally construed, in years gone by, it would have prevented attorneys and counselors, under former statutes that prescribed their fees, recovering any extra compensation for their services under a *quantum meruit*. But it was not so construed. (*See Adams* v. *Stevens*, 26 *Wend.* 451.)

The statute, under which the plaintiff obtained compensation of the state for his expenses and services, declares: " When the governor of this state, in the exercise of the authority conferred by the constitution of the United States, or by the laws of this state, shall demand from the governor of any state or territory in the United States, or from the executive authority of any foreign government, any fugitive from justice, the accounts of the *persons employed* by him for that purpose, for their services, shall be audited by the comptroller, and paid out of the treasury." (2 *R. S.* 748, § 45.)

The statute authorizes the governor to employ any person he chooses, to go in search of fugitives from justice, and empowers the comptroller to fix their compensation for their services. (*Crocker on Sheriffs*, § 1102.) In audit-

ing accounts for such services, I suppose the comptroller may take into consideration the fact that the persons who rendered them have received or are to receive rewards therefor from individuals, and that they procured the requisitions with the view of obtaining rewards of individuals if they should succeed in finding the fugitives and bringing them back to this state. Perhaps the comptroller fixed the plaintiff's compensation for his services under the two requisitions for Loop, at only $42, for the reason that he supposed the plaintiff would receive $250 reward of the defendant.

The plaintiff spent twenty-one days in search of Loop, under the two requisitions, and about four weeks looking after him, by reason of the reward promised by the defendant for his safe lodgment in the Elmira jail. He accomplished precisely what the defendant desired him to do, viz., the arrest of Loop and his safe lodgment in the Elmira jail. And it was wholly immaterial to the defendant what means the plaintiff used in doing the business. It was the thing to be done, and not the manner of doing it, to which the defendant's promise applied.

My conclusion is that the defendant's promise was valid, and entitled the plaintiff to recover. But the judge at the trial overlooked the fact, stated in the complaint, that $56.75 was paid by the defendant to the plaintiff on the 4th day of December, 1858, towards the reward for which the action was brought. The plaintiff therefore recovered too large a judgment; and for this reason it must be reversed, and a new trial granted in the action, costs to abide the event; unless the plaintiff shall, within twenty days deliver to the defendant's attorney a stipulation to the effect that the sum of $56.75, with interest thereon from the 4th day of December, 1858, shall be deducted from the judgment when paid. But if such stipulation be given, then the judgment in the action shall be affirmed, with

costs ; and a copy of such stipulation, with proof of serv-
ice on the defendant's attorney, shall be included in the
affirmance roll.

[BROOME GENERAL TERM, July 10, 1860. *Mason, Balcom, Campbell* and
*Parker,* Justices.]