KINN and another, Appellants, vs. FIRST NATIONAL BANK
  OF MINERAL POINT and others, Respondents.

*May 29—July 3, 1903.*

*Rewards: "Arrest and conviction": Rights of claimants: Police
  officers: Rights to recover reward: Costs: Findings: Appeal and
  error.*

1. A reward is a recompense or premium offered by the govern-
   ment or an individual in return for special or extraordinary
   services to be performed, and may be made in writing or orally,
   either to a particular person or class of persons, or to any and
   all persons complying with its terms.
.2. An offer of a reward for the "arrest and conviction" of an un-
   known perpetrator of a crime cannot be taken literally, but
   the conditions thereof are substantially performed by a person
   who obtains possession of the facts necessary to secure the
   arrest and conviction, *and gives them* to some proper person
   interested, although he does not himself make the arrest, but
   this and the prosecution are made by the proper officers.
.3. Police and other officers may recover a reward offered when the
   information furnished or the service performed was *extra
   official*, but cannot recover the reward offered if the informa-
   tion furnished or the service performed was within the scope
   of the duties of such officer.
.4. A reward for the arrest and conviction of the person who com-
   mitted a bank robbery having been offered, O., a chief of po-
   lice, on information furnished by his co-plaintiff, made an
   arrest, without warrant, within the city limits. Thereupon
   defendant T., as deputy sheriff, took the prisoner in charge
   upon a warrant for his arrest, and, after several days' con-
   finement, followed by a confession and plea of guilty, the pris-
   oner was convicted and sentenced. Ch. 272, Laws of 1901,
   prescribes the duties of such chief of police as follows: "He
   shall possess the powers, enjoy the privileges and be subject
   to the liabilities conferred and imposed by law upon con-
   stables, and be taken as included in all writs and papers
   addressed to constables. It shall be his duty . . . to ar-
   rest, with or without process . . . every person found in
   the city in a *state of intoxication* or engaged in any *disturb-
   ance of the peace,* or *violating any law* of the state or ordi-
   nance of such city." *Held,* that such statute imposed no duty
   .on the chief of police to make such arrest without process,

and the mere fact that O. was at the time such officer did not preclude him from the reward or any portion thereof.

5. Under sec. 2789, Stats. 1898 (providing that the defendant in any action may serve on plaintiff an offer of judgment "with costs," and plaintiff, if he refuse, must pay defendant's costs "from the time of the offer"), where a bank had offered a reward for the arrest and conviction of the person who robbed it, and, on being sued by one claimant, paid the amount of the reward into court and procured the other claimants to be interpleaded, the whole of such reward so deposited in court must be deemed to be the property of the claimants who may ultimately recover, and it is error to adjudge costs in favor of the bank, payable out of the fund in court.

6. Under sec. 2863, Stats. 1898 (providing that in trials of questions of fact by the court the judge shall state separately in his decision the facts found by him and his conclusions of law thereon), there is nothing to support a judgment, where the judge makes no findings of fact on issues presented, and the evidence fails to disclose with reasonable certainty the rights of the respective parties.

APPEAL from a judgment of the circuit court for Iowa county: GEO. CLEMENTSON, Circuit Judge. *Reversed.*

It appears and is undisputed that on the night of May 24, 1901, the *First National Bank of Mineral Point* was burglarized, and about $25,000 stolen therefrom; that May 25, 1901, the bank publicly and orally offered a reward of $1,000 for the "arrest and conviction" of the culprit, or, as admitted by the bank, "for the arrest and securing the conviction of the person who committed the burglary;" that about that time suspicion fell upon one Stewart Jelleff, *alias* H. C. Winter, who had disappeared; that May 27 or 28, 1901, Jelleff was arrested and taken into custody and lodged in jail, and thereupon made confession, and on July 10, 1901, pleaded guilty in the circuit court, and on that day was convicted and adjudged guilty of the crime, and sentenced to the State Reformatory at Green Bay. July 15, 1901, the plaintiffs commenced this action against the bank, and in their complaint alleged, in effect, that in pursuance of the offer they made search for Jelleff, and found him, and made the

arrest without warrant or process, and that they had performed all the conditions of the offer and claimed the reward. The bank answered, admitting the burglary, the suspicion of Jelleff, and his disappearance, and that it had "offered publicly a reward of one thousand dollars for the arrest and securing the conviction of the person who had committed said burglary"; that the plaintiff *Ovitz* had taken Jelleff into custody without warrant or process; that Jelleff pleaded guilty, and was sentenced to a term in the State Reformatory at Green Bay; and the answer alleges, in effect, that the plaintiffs claim such reward; that *William B. Dawe, Charles H. Terrell,* Mark A. Shepley, and *Alfred Richards,* without any collusion between either of them and the bank, each made the same claim, and each demanded and claimed the $1,000; that they, or some of them, did acts and gave information in connection with the arrest and securing the conviction of Jelleff which might entitle them to the reward, or some portion thereof; that the bank was unable to determine the rights of the respective persons claiming the reward, and thereby offered to pay the $1,000 into court, to be paid to whomsoever should be found entitled thereto; and that a complete determination of the controversy could not be had without the presence of each of the persons named as parties, and prayed for an order making them parties accordingly. Such order was made September 30, 1901, reciting that the bank had deposited $1,000 in court, and therein required that the summons and complaint be amended accordingly, and served on each of the persons named. Shepley disclaimed any right to the reward in open court, and requested that he should not be made a party, and he was not. The defendants *Dawe, Terrell,* and *Richards* each answered separately. *Dawe* demanded the reward by reason of having found some evidence which he claims would have been important had the burglar pleaded not guilty and stood trial, and which he claims had an influence in causing the burglar to plead guilty. *Terrell*

demanded the reward by reason of having secured evidence which he claims would have been important had the burglar pleaded not guilty. *Richards* demanded the reward by reason of having given to the plaintiff *Ovitz* information which he claims led to the arrest of the burglar. At the close of the trial the court made findings, which, in addition to the admitted facts mentioned, consist mostly in a recitation of evidence in detail. Among other things, it is, in effect, found, as a matter of fact: (5) That many persons made search for evidence regarding the burglary, and for the money that had been stolen, and pieces of evidence having some tendency to show that Jelleff was the burglar were discovered by persons making no claim to the reward. (6–11) That during the evening of May 27, 1901, the defendant *Richards* drove out through Cocking's Grove—just beyond the city limits—and there discovered Jelleff, and returned to the city, and informed the plaintiff *Ovitz,* the city marshal, who, with the plaintiff *Kinn,* drove out, and found Jelleff, and arrested him, without warrant or process, and lodged him in jail. (12) The findings then state in detail the numerous facts upon which the defendant *Dawe* claims the reward, and (13) the same with respect to the defendant *Terrell.* (14) The court then finds, in effect, that Jelleff was arrested by *Ovitz* without a warrant, within the city limits, May 28, 1901; that *Terrell,* as deputy sheriff, then took him in charge upon a warrant for his arrest, and kept him for a number of days in a cell in the city hall, and for his services as deputy sheriff he filed a claim against the county, which was allowed and paid. (15) That Jelleff finally confessed, pleaded guilty, and was convicted and sentenced as stated. (16) That the other allegations of the complaint are not sustained by the evidence. (17) That all the issues of fact raised by the pleadings in this action are hereby found and decided in favor of the defendants *Richards* and *Dawe* and against all the

other parties to this action. As conclusions of law the court found, in effect: (1) That the plaintiffs *Kinn* and *Ovitz* and the defendant *Terrell* made claim to the reward in good faith, and upon probable grounds, and the costs in this action should not be imposed upon them; (2) that the taxable costs of the defendant bank, and also the taxable costs of the defendants *Richards* and *Dawe,* should be paid out of the fund in court; (3) that the remainder of said fund should be divided equally between the defendants *Richards* and *Dawe;* and the court ordered judgment to be entered accordingly. From the judgment so entered, the plaintiffs bring this appeal.

For the appellants there was a brief by *Fiedler & Fiedler,* and oral argument by *E. C. Fiedler.* They contended, *inter alia,* that the court erred in holding the reward may be apportioned. Unless a party claiming the reward participates in making the arrest, he cannot recover, regardless of what he may have done to bring about a conviction. *Williams v. West Chicago St. R. Co.* 191 Ill. 610; *Hogan v. Stophlet,* 179 Ill. 150, 44 L. R. A. 810; *Furman v. Parke,* 21 N. J. Law, 310; *Fitch v. Snedaker,* 38 N. Y. 248; *Juniata Co. v. McDonald,* 122 Pa. St. 115; *Pool v. Boston,* 5 Cush. 219; *Jones v. Phœnix Bank,* 8 N. Y. 228; *Blain v. Pacific Exp. Co.* 69 Tex. 74; *Shuey v. U. S.* 92 U. S. 73.

For the respondents there was a brief by *Smelker & Smelker* for respondent *Dawe,* and a separate brief by *J. M. Smith,* attorney, and *Herbert Kinne,* of counsel, for respondent *Richards,* and oral argument by *Mr. Kinne.* They contended, *inter alia,* that the part taken by *Ovitz* in the premises was simply in discharge of his official duties for which he was paid, and on the grounds of public policy he could not claim the reward offered. *Austin v. Milwaukee Co.* 24 Wis. 278; *Ring v. Delvin,* 68 Wis. 384; *Lees v. Colgan,* 120 Cal. 262, 40 L. R. A. 355; *Hogan v. Stophlet,* 179 Ill. 150, 44 L. R. A. 809, 811, 812; *Witty v. Southern Pac. Co.* 76 Fed.

217; Cooley, Torts, 175; *Keenan v. State,* 8 Wis. 132, 136;
*Mitchell v. Vance,* 5 T. B. Monroe, 528, *Gillmore v. Lewis,*
12 Ohio, 281.

CASSODAY, C. J.    To appreciate the questions presented, it
is important to keep in mind the nature of the action.    It is
said: "A reward is a recompense or a premium offered by the
government or an individual in return for special or extraor-
dinary services to be performed."    21 Am. & Eng. Ency.
of Law, 389.    Such offer may be made in writing or orally,
either to a particular person or class of persons, or to any
and all persons complying with its terms.    21 Am. & Eng.
Ency. of Law, 391; *Reif v. Paige,* 55 Wis. 496, 13 N. W.
473.    Of course, "one who offers a reward has the right to
prescribe whatever terms he may see fit; and these terms must
be complied with before any contract arises between him and
the claimant, though, if the performance substantially cor-
responds with the terms of the offer, it will generally be suffi-
cient."    21 Am. & Eng. Ency. of Law, 395–6; *Amis v. Con-
ner,* 43 Ark. 337.    Thus it has been held in Massachusetts
that an "offer or reward by public advertisement is to be re-
garded as a conditional promise.    Whoever would entitle him-
self to the reward must prove that he has performed sub-
stantially the service proposed in the advertisement, though
it need not be performed literally."    *Besse v. Dyer,* 9 Allen,
151.    Here the complaint alleges that the reward was offered
"for the 'arrest and conviction' of the culprit who had burg-
larized the" bank.    The admission in the answer of the bank
is "for the arrest and securing the conviction of the person
who had committed said burglary."    The respective answers
of the other defendants seem to admit that the offer was as al-
leged in the complaint.    The court found that the "bank or-
ally offered a reward of one thousand dollars for the *arrest
and conviction* of the person or persons who had committed
the said crime."    We assume that the offer was as found by

the court. It seems to be well settled that, where "a reward
is offered for the arrest and conviction of a criminal, . . .
both the arrest and conviction . . . are conditions prece-
dent to a recovery of the reward." 21 Am. & Eng. Ency. of
Law, 396–7; *Jones v. Phœnix Bank,* 8 N. Y. 228; *Furman v.
Parke,* 21 N. J. Law, 310; *Blain & K. v. Pacific Exp. Co.*
69 Tex. 74, 6 S. W. 679. Of course, it is competent for a
party offering a reward to waive strict, or even substantial,
conditions of the offer. 21 Am. & Eng. Ency. of Law, 397.
Here the bank, when sued, conceded its liability, and paid the
money into court, and thereby seems to have admitted that
somebody was entitled to the reward. The extent of this ad-
mission is simply to the effect that the person who committed
the offense had been arrested by some of the claimants and
convicted. The important question is, who, of the several
claimants, are entitled to the reward? The action is upon
contract. Only such claimants as substantially complied
with the terms of the offer are entitled to any portion of the
reward. The reward was offered for the arrest and conviction
of the offender. What is meant by the terms "arrest and con-
viction?" This question has recently been answered by the
supreme court of Maine in a case where it was held:

"An offer of a reward for 'the arrest and conviction' of an
unknown perpetrator of a crime cannot be taken literally, but
the conditions thereof are substantially performed by a per-
son who obtains possession of the facts necessary to secure
his arrest and conviction, *and gives them* to some proper per-
son interested, although he does not himself make the arrest,
but this and the prosecution are made by the proper officers."
*Haskell v. Davidson,* 91 Me. 488, 40 Atl. 330.

In that case the claimants, in pursuance of the offer, made
investigation, and discovered facts and circumstances which
tended strongly to inculpate the accused, and thereupon dis-
closed such facts and circumstances to the deputy sheriff,
who, upon process issued, made the arrest. The accused
thereupon confessed and pleaded guilty and was sentenced,

the same as here. As said in that case, the claimant himself
could not convict the offender. That case followed the ruling
in *Besse v. Dyer,* 9 Allen, 151, and also *Crawshaw v. Rox-
bury,* 7 Gray, 374, where the offer was "for the apprehension
and conviction" of the offender. In respect to that case it
was there said:

"The court at *nisi prius* instructed the jury, in regard to
the service to be performed to entitle the plaintiff to a re-
ward, that the offer of a reward could not be taken literally,
for, as the conviction must be in due course of law, requiring
the intervention of the court and jury, a person might be en-
titled to the reward by becoming the prosecutor, and as such
causing the arrest and conducting the case to a conviction, or
he might be entitled to it by giving information which should
lead to and produce the arrest and conviction of the offender.
This instruction was unqualifiedly sustained by the full
court," with SHAW, C. J., presiding.

It will be observed that in these cases the claimant partici-
pated in making the arrest to the extent of discovering and
disclosing to the officer or person interested facts and circum-
stances tending to convict the offender. The case at bar is
unlike those where the offer of reward is for information
which will lead to the discovery or arrest and conviction of the
offender. In such a case the giving of the information in
compliance with the terms of the offer entitles the person
doing so to the reward. *Williams v. Carwardine,* 4 B. & Ad.
621-3; *S. C.* 6 E. R. C. 133-9, and notes; Lawson, Con-
tracts, §§ 12, 26. Thus it is stated as elementary: "Where
a reward is offered for information, and several persons fur-
nish distinct pieces, which combined make a perfect whole,
it may be equitably apportioned amongst them; a bill of in-
terpleader being maintainable for such purpose." 21 Am. &
Eng. Ency. of Law, 399, 400. In support of that statement
see *Fargo v. Arthur,* 43 How. Pr. 193; *Rea v. Smith,* 2
Handy, 193. The so-called findings of fact seem to be based

upon the theory that the offer of reward by the bank was for the furnishing of information or evidence leading to such arrest and conviction, instead of the offer which was in fact made.

The findings from 6 to 13, inclusive, contain lengthy recitals of evidence in respect to *Richards, Ovitz, Dawe,* and *Terrell,* without finding therein any of the facts material to the determination of the controversy as to who had in fact complied with the offer of the bank. The court finally, after the deduction of certain alleged costs, found that the remainder of the fund should be divided equally between *Richards* and *Dawe;* and yet there is no finding that they or either of them participated in making the arrest, which was one of the conditions imposed by the offer. The court does find that the plaintiff *Ovitz* made the arrest, without warrant, within the city limits, and that he was at the time marshal of the city, his official designation being "chief of police," and that he was on a salary. That he was such official is claimed to be the ground on which the court refused to allow him any portion of the reward. Counsel for the plaintiffs concedes that upon grounds of public policy a public officer cannot recover a reward for an act which it was his official duty to perform. They contend, however, that it was not *Ovitz's* official duty to make the arrest without process. The statute prescribed his duties as follows:

"He shall possess the powers, enjoy the privileges and be subject to the liabilities conferred and imposed by law upon constables, and be taken as included in all writs and papers addressed to constables. It shall be his duty to obey all lawful written orders of the mayor or common council; to arrest, with or without process, and with reasonable diligence to take before the police justice every person found in the city in a *state of intoxication* or engaged in any *disturbance of the peace* or *violating any law* of the state or ordinance of such city." Ch. 272, Laws of 1901.

We find nothing in this statute nor any other making it his duty to make such arrest without process.

The general rule undoubtedly is:

"Police and other officers may recover the reward offered when the information furnished or the service performed was *extra official,* but cannot recover the reward offered if the information furnished or the service performed was within the scope of the duties of such officer." 21 Am. & Eng. Ency. of Law, 400, 401; *England v. Davidson,* 11 Ad. & El. 856, 39 E. C. L. 254; *Neville v. Kelly,* 12 C. B. (N. S.) 740, 104 E. C. L. 740; *Davis v. Munson,* 43 Vt. 676; *Russell v. Stewart,* 44 Vt. 170; *Bronnenberg v. Coburn,* 110 Ind. 169, 174, 11 N. E. 29; *Gregg v. Pierce,* 53 Barb. 387; Mechem, Pub. Officers, §§ 376, 885.

Thus, it was held in the first of the Vermont cases cited:

"A sheriff acting in reliance upon a general offer of a reward for the capture of a criminal is entitled to the reward the same as though not a peace officer, where he succeeds in making the capture, *having no process in his hands.*"

To the same effect, *Gregg v. Pierce, supra,* and *Reif v. Paige,* 55 Wis. 496, 13 N. W. 473. We must hold that the mere fact that *Ovitz* was at the time city marshal did not preclude him from the reward or a portion thereof. In respect to the plaintiff *Kinn,* the court has made no findings, except to state by way of recitals that he voluntarily offered to take and did take *Ovitz* in his vehicle out to arrest Jelleff, and that on the way out *Ovitz* gave to him one of the revolvers he was carrying. All the claimants seem to have known of the offer of the reward prior to their doing the several acts by virtue of which they, respectively, claim the reward, or some part thereof. There is nothing in the statutes cited (Stats. 1898, secs. 132, 725a), nor otherwise, to prevent the reward from being apportioned among two or more claimants, who may have participated in complying with the terms of the offer.

All the several claimants were properly brought into the

case by interpleader, as prescribed by the statute.   Sec. 2610, Stats. 1898.

We are unable to perceive on what theory costs were adjudged in favor of the bank, payable out of the fund in court. The bank was, confessedly, liable to pay the reward, and for costs incurred up to the time of its disclaimer and deposit of the reward in court.   Sec. 2789.   The whole amount of the reward so deposited in court must be deemed to be the property of the claimants who may ultimately be found entitled thereto.   We perceive no reason why claimants who ultimately fail to recover should be exempt from paying costs, nor why those who ultimately recover should not be entitled to costs.   The cause seems to have been tried upon a misapprehension of the law as applied to the facts of the case, and no findings of fact were made as prescribed by the statute.   Sec. 2863, Stats. 1898.   The result is that there are no findings nor evidence to support the judgment.

The evidence fails to disclose with reasonable certainty the rights of the respective claimants.   It seems clearly to establish that *Ovitz* made the arrest, and is therefore entitled at least to share in the reward; but whether *Richards* can be held to have participated is not clear.   Doubtless, if he brought information of his discovery, and secured the co-operation of *Ovitz* to return with him to make the arrest, then he would be legally a participant.   If, after giving the information, he was prevented from accompanying *Ovitz* by the latter's subterfuge, then *Ovitz* should have no larger share than if *Richards* accompanied him, nor should *Richards* have less.   If, on the other hand, *Richards* intentionally evaded any participation in the actual arrest, the mere giving of information to *Ovitz,* not in his official capacity, would not be a compliance with the offer of reward.   As to *Kinn,* his share, if any, in the recovery must depend on the facts, as to *Richards,* whether the latter intentionally refrained from joining in the arrest, or was prevented by the acts of *Ovitz,* in which

*Kinn* participated. The trial court is the appropriate place for the determination of such questions. There must be further trial in this case. This is in harmony with what is said in *Brown v. Griswold,* 109 Wis. 275, 280, 85 N. W. 363, and *Bostwick v. Mutual Life Ins. Co.* 116 Wis. 392, 92 N. W. 246, 259.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for further trial and proceedings according to law.